UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| LISA N. STRANGE,<br><br>        Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration<br><br>        Defendant | 2:15-CV-00282-MCLC |

MEMORANDUM AND ORDER

This matter is before the United States Magistrate Judge upon the consent of the parties and an order of reference from the District Judge [Doc. 13] for final disposition. This is an action for judicial review of the final decision of the defendant Commissioner denying the plaintiff's applications for disability insurance benefits under the Social Security Act following a hearing before an Administrative Law judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 9], while the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 15].

I.     STANDARD OF REVIEW

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be

1

drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

> 1. Has the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

2

> 5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

## II. PROCEDURAL BACKGROUND

### A. Plaintiff's initial disability application

On September 4, 2012, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 20, 2011. Plaintiff was 50 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 32). She graduated from high school and completed two years of college. (Tr. 163). She was previously employed as a jailer with the Mecklenburg County, North Carolina sheriff's department, as a sales person at a car lot, and then as a finance officer for the car lot. (Tr. 32-36). She applied for disability due to suffering from Crohn's disease, anemia, fibromyalgia, "blood transfusion," depression, anxiety and "nerves." (Tr. 162). Her insured status will expire on December 31, 2016. (Tr. 158). After being initially denied disability, (Tr. 90-92), she filed a request for reconsideration, which was also denied. (Tr. 95-96). She then requested a hearing before an ALJ. (Tr. 97).

### B. The hearing before the ALJ

On June 12, 2014, the ALJ John McFadyen conducted the hearing. At the hearing, Plaintiff testified as well as Dr. Susan Bland and Adrian Bentley Hankins, a vocational expert. Plaintiff testified that she could no longer perform her past relevant work. (Tr. 37). She testified that she suffered from Crohn's disease, anemia, that she cannot breath well, suffered from internal bleeding, that she had portions of her intestines surgically removed because of polyps

3

and ulcers, that she had a lumpy liver, fibromyalgia, suffered from anxiety, that she cannot clean her house or drive a car, and cannot go anywhere by herself. (Tr. 39-42).

Dr. Bland testified that Plaintiff was suffering from Crohn's disease and anemia, both of which she classified as severe impairments. (Tr. 43). She discounted Plaintiff's complaint of diabetes and arthritis as she found no documentation in the medical records to support any functional limitations. (Tr. 45). She opined that as of August 20, 2011, Plaintiff would be restricted to a light level of activity "with postural activities occasionally. She would need to have ready access to a bathroom and be able to take breaks when needed for her symptoms." (Tr. 49). She noted that her opinion that Plaintiff needed to have ready access to a bathroom was based on Plaintiff's subjective complaints. (Tr. 53). Dr. Adrian Bentley Hankins also testified that Plaintiff's prior relevant work as an automobile salesperson and finance manager were skilled occupations that required light exertion. (Tr. 54).

### C. The ALJ's determination

At the outset of this case, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act on her alleged disability onset date of August 20, 2011 and continued to meet them through December 31, 2016. (Tr. 14); *see also* 20 C.F.R. § 404.131. Then at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 14).

At step two, the ALJ found Plaintiff to suffer from the severe impairments of Crohn's disease and Anemia. (Tr. 14). He concluded that Plaintiff's diabetes did not constitute a severe impairment because the medical records did not indicate any residual deficits associated with the condition. He also noted that Plaintiff was obese, but that her obesity did not impose any limitations on her activities. (Tr. 14). He observed that Plaintiff had an ulcer, but found that it did not last 12 months, and that after it was treated, she left the hospital in a stable condition. He found no functional limitations to Plaintiff's nose bleeds. (Tr. 15). He also found Plaintiff's

4

fibromyalgia did not impose any limitations on her based on the lack of any medical evidence evincing any impairment. He noted that other than noting the disorder, there were no medical tests that were performed to confirm the diagnosis. (Tr. 15). He also observed that while Plaintiff had abnormal liver blood work, this condition was not associated with any impairment. Finally, he examined Plaintiff's mental impairments. He noted that Mr. Art Stair and Dr. Charlton Stanley diagnosed Plaintiff with Major Depressive Disorder (moderate), panic disorder (moderate with agoraphobic features) with a Global Assessment of Function (GAF) score of 49. (Tr. 15).[1] Although the state agency psychological consultants, Dr. Robert de la Torre and Jenaan Khaleeli, found Plaintiff suffered from severe impairments of anxiety disorder and an affective disorder, the ALJ found those impairments did not cause Plaintiff more than minimal limitations in her ability to perform basic work activities. He concluded they were non-severe. (Tr. 16).

In finding Plaintiff's mental impairments non-severe, the ALJ examined the four functional areas for evaluating mental disorders in § 12.00C of the Listing of Impairments, 20 C.F.R., Pt 404, Subpart P, Appendix 1). These are the "Paragraph B" criteria, consisting of (1) daily living activities, (2) social functioning, (3) concentration, persistence and pace, and (4) episodes of decompensation. In the first three categories, he found Plaintiff to have only mild limitations, and found no episodes of decompensation. (Tr. 17).

To reach the "mild" limitation finding, he gave little weight to the state agency psychological consultants as well as little weight to the opinions of Mr. Stair and Dr. Stanley, finding them not consistent with the medical record and largely based on Plaintiff's subjective complaints. In discounting their opinions, he noted that Plaintiff had only received treatment from her primary care provider, not a specialist. She did not require any psychiatric hospital

---

[1] They found that Plaintiff's ability to maintain persistence and concentration on tasks for a full workday and workweek was at least moderately impaired. (Tr. 16). They also found that Plaintiff's ability to adapt to changes in the workplace and social relationships were at least moderately impaired. (Tr. 16).

5

admissions or even mental health counseling. Finally, he noted that "at times, she did not mention symptoms of her mental impairments." (Tr. 17).

At step three, the ALJ determined Plaintiff's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d) and 404.1526. (Tr. 18). He specifically noted that Plaintiff's Crohn's disease did not rise to the level of severity required under the regulations.

At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b).[2] He reviewed Plaintiff's medical history, (Tr. 19-21), and found her subjective complaints not credible. (Tr. 22). Although Plaintiff testified to severe limitations in her daily activities, (Tr. 41-42), he found those limitations could not be "objectively verified." (Tr. 22). He also noted that even if her limitations in her daily activities were verifiable, he found it would be difficult to attribute the severity of those limitations to her medical condition, especially in light of the paucity of medical evidence in that regard. (Tr. 22).

The ALJ discounted Dr. Bland's requirement that Plaintiff "have ready access to a bathroom and be able to take breaks when needed for her [Crohn's] symptoms" because that opinion was based solely on Plaintiff's subjective complaints, which he found incredible. (Tr. 49). He also found Dr. Bland's postural limitations were not supported by the medical record and refused to give her opinion any weight in that regard. (Tr. 22). Instead, the ALJ found Plaintiff had no postural limitations, citing to Dr. Marianne Filka's evaluation. (Tr. 285) Dr. Filka, who performed a consultative examination, noted that Plaintiff's

> gait [was] normal that is done with no assistive device. She is able
> to toe stand, do a partial squat, and do a one-leg stand right and

---

[2] 20 C.F.R. § 404.1567(b) defines light work as "involve[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

6

> left. Posture changes are done without particular evidence of difficulty climbing up and down off the exam table going from sitting to lying, lying to sitting, sitting to standing, and bending."

(Tr. 288). Thus, because the ALJ found that Plaintiff's prior relevant work required light exertion and that Plaintiff was capable of light exertion, he found that Plaintiff was capable of performing her past relevant work as an auto salesperson and finance manager. Accordingly, he found Plaintiff not disabled.

## III. DISCUSSION

### A. Plaintiff's claim that the ALJ erred in assessing the severity of Plaintiff's Crohn's disease under Appendix 1

Plaintiff first claims that the ALJ erred as a matter of law in concluding that "Plaintiff's Crohn's disease did not rise to the level of severity required by Appendix 1 without articulating specific facts." [Doc. 9-1, pg. 16]. Appendix 1 is commonly referred to as the listings, found at 20 C.F.R. 404 Subpart P, Appendix 1. To meet a listing, Plaintiff must show that she is precluded from any gainful activity, rather than substantial gainful activity. In this case, the listing that addresses Plaintiff's particular condition is listing 5.06 (inflammatory bowel disease).[3]

---

[3] The listing defines IBD as follows:

*5.06 Inflammatory bowel disease (IBD)* documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with:
**A.** Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6-month period.
OR
**B.** Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6-month period:
1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
5. Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart; or

7

At the third step in the disability evaluation process, a claimant will be found disabled if her impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491 (6th Cir. 2010). "The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.' 20 C.F.R. § 404.1525(a). In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Id*. § 404.1525(c)(3). A claimant must satisfy all of the criteria to "meet" the listing. *Id*.; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). An ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. Cf. *Lawson v. Comm'r of Soc. Sec.*, 192 Fed.Appx. 521, 529 (6th Cir.2006) (upholding ALJ who "compar[ed] the medical evidence of Lawson's impairments with the requirements for listed impairments contained in the SSA regulations"); 30 Fed. Proc., L.Ed. § 71:234.

In this case, the ALJ found that Plaintiff suffered the severe impairments of Crohn's disease and Anemia (Tr. 14). While it is true, at step three, the ALJ did not engage in any detailed analysis regarding whether Plaintiff's Crohn's disease met or equaled a Listing other than his conclusion that it did not, he did engage in a lengthy analysis of its symptoms. (Tr. 18). See *Bledsoe v. Barnhart,* 165 Fed.App'x 408, 411 (6th Cir. 2006)(finding the ALJ appropriately

---

6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.

8

Case 2:15-cv-00282-MCLC   Document 17   Filed 08/11/16   Page 8 of 14   PageID #: 520

considered a claimant's combined impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings).

The ALJ considered Plaintiff's testimony that she "could not physically maintain her job as a jailer because … she had to go to the bathroom sometimes twenty times or more." (Tr. 18). He noted that when she worked as a finance officer, she testified that she "would have to get up in the middle of a transaction, get people to pull over during a test drive to go into a store to take a bathroom break, or … excuse herself multiple times." (Tr. 18). He also observed that Plaintiff was anemic and that this condition required her "to go to the emergency room … because her blood count was low." (Tr. 18). He noted that in February 2012, she presented to her primary care provider with complaints of shortness of breath and palpitations, and following a blood test that revealed severe anemia, she was admitted to the emergency room, where she stayed for four days. In April 2012, he noted that she reported that she was "feeling much better…." (Tr. 20, 255).

In light of Plaintiff's testimony, he considered her medical record. The ALJ noted a gap in the treatment records from April 2012 through November 2012 when she underwent a consultative examine with Dr. Marianne Filka. (Tr. 20). There, Plaintiff advised Dr. Filka that she was having frequently small and sometimes large bloody loose stools up to 20 times a day. (Tr. 20). Plaintiff advised that she had not seen a gastroenterologist because she could not afford the service. (Tr. 20). But in contrast to what she told Dr. Filka, when she saw her primary care physician on November 19, 2012, just a few days after meeting with Dr. Filka, she noted that she "had not been having any abdominal pain…[and that] [s]he is not taking any medication for Crohn's disease." (Tr. 21, 293). Four months later, she indicated she was "having no problems with her Crohn's disease." (Tr. 304).

9


Based on his review of the record, the ALJ found Plaintiff not credible and gave little weight to her allegations of disability. (Tr. 22). He noted that although he could not objectively determine whether her professed limitations of her daily activities were accurate, even if they were, he could not attribute "that degree of limitation to [her] medical condition…." (Tr. 22). In support of this conclusion, he noted that she "has not received the type of medical treatment one would expect for a totally disabled person." (Tr. 22).

Plaintiff "must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify"). In this case, Plaintiff has not established that her Crohn's disease fits into either Listing 5.06A or 5.06B.

### B. Plaintiff's claim that the ALJ erred in assessing Plaintiff's credibility

Plaintiff next contends that the ALJ erred when he found her incredible "regarding her physical condition without recitation of specific medical evidence to justify that conclusion." [Doc. 9-1, pg. 16]. She cites to *Gallun v. Bowen*, 638 F.Supp 1272 (S.D. Fla. 1986) for support. In *Gallun,* the district court found that there was not substantial evidence to support the ALJ's finding plaintiff's testimony was "not corroborated by objective medical evidence." *Id.* at 1276. Her treating physician opined that the plaintiff had spinal stenosis with severe pain, that she had problems walking and sitting, that her complaints were credible, and that "laboratory results showed the existence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged." *Id.* The ALJ claimed that her physician had not submitted

10

objective clinical findings substantiating a finding of disability. In other words, the ALJ simply ignored the medical evidence of record.

In this case, the ALJ cited to specific portions of the medical record which directly question the credibility of Plaintiff's allegations about the severity of her symptoms. For example, in early November 2012, Plaintiff complained to Dr. Filka's about her abdominal pain and her constant need to use the restroom up to 20 times a day. In contrast, a few days later, she told her primary care physician she has no abdominal pain and is not taking any medication for Crohn's disease. Moreover, a few months later, she professed that she was having no problems with her Crohn's disease. (Tr. 304). Contrary to Plaintiff's contentions, the ALJ did not simply reject Plaintiff's allegations of disability out of hand. He did so only after analyzing the medical record. This issue is without merit.

### C. Plaintiff's claim that the ALJ erred by ignoring the regulations regarding the severity of Plaintiff's Crohn's disease at step three.

The third issue raised by Plaintiff is that the ALJ ignored the existing regulations regarding the medical severity of Crohn's disease at Step three. This issue is quite similar to the first issue raised by Plaintiff. Here she argues that she testified at the hearing to "all of these symptoms" save for one that are listed in Appendix 1, § 5.00(E)(2).[4] The ALJ found that she suffered from Crohn's disease but noted that "the treatment records generally report benign clinical presentations." (Tr. 22). He noted that she was not even taking medication to treat her Crohn's disease and gave inconsistent histories to Dr. Filka and to her primary care physician just a few weeks later. In fact, four months after describing debilitating abdominal pain and claiming to experience 20 bowel movements a day, she indicated she was "having no problems with her Crohn's disease." (Tr. 304). "Whenever a claimant's complaints regarding symptoms,

---

[4] Appendix 1, § 5.00(E)(2) lists the symptoms and signs of inflammatory bowel disease.

or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). In this case, the ALJ found Plaintiff's complaints regarding the symptoms, intensity and persistence of her Crohn's disease not supported by the medical record.

Plaintiff also complains that the ALJ failed to "consider the effects of [Plaintiff's] extra intestinal manifestations in determining whether [she has] an impairment that meets or medically equals another listing, and … the effects of [Plaintiff's] extra intestinal manifestations … assess[ing] [her] residual functional capacity." [Doc. 9-1, pg. 20]. But that is exactly what the ALJ did. While he found her allegations as to the severity of the symptoms to be incredible, he did limit her residual functional capacity to a full range of the light exertional level "due to the [Crohn's disease and Anemia] impairments…." (Tr. 21). This issue is without merit.

### D. Plaintiff's claim that the ALJ erred by giving more weight to non-examining physicians than to examining physicians.

The fourth issue Plaintiff raises is that the ALJ violated the regulations by giving "much more weight to the non-examining physician's testimony than to the examining physician's testimony." That is generally true, but "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6P (S.S.A. July 2, 1996).

It is not *per se* error to ascribe more weight to a non-examining physician over an examining or treating physician. See, e.g., *Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x. 433, 439 (6th Cir. 2012)("Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is

12

inconsistent with the record.") (citations omitted); see also *Brooks v. Comm'r of Soc. Sec.*, 531 Fed. App'x. 636, 642 (6th Cir. 2013) (observing that in appropriate circumstances, opinions from State agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources) (citing SSR 96–6p).

In this particular case, the ALJ ascribed less weight to Dr. Filka's opinion even though she was an examining medical source. This was, in part, because Dr. Filka based her opinion on the subjective complaints of Plaintiff. Those complaints, which the ALJ found to be incredible, related to the frequency of her bowel movements and her experiencing severe abdominal pain. Thus, it was not inappropriate to ascribe more weight to the non-examining physicians over Dr. Filka.

The ALJ ascribed greater weight to Dr. Bland as Dr. Bland had an opportunity to listen to Plaintiff's testimony and review the entire medical record but discounted her testimony about the postural and bathroom-related limitations. First, he noted that Dr. Bland did not explain the rational behind the postural limitations as the medical record was silent regarding whether Plaintiff had any such limitations. In fact, Dr. Filka found no postural limitations. Second, he found Dr. Bland's conclusion that Plaintiff needed ready access to a bathroom was based on Plaintiff's subjective complaints, not on the medical evidence. (Tr. 22, 53). He otherwise credited Dr. Bland's finding that Plaintiff could perform a full range of the light exertional level. The ALJ did not error in ascribing greater weight to the non-examining physicians.

### E. Plaintiff's claim that the ALJ disregarded regulations regarding the use of vocational expert testimony.

The next issue Plaintiff contends was error was that the ALJ disregarded the regulations regarding the use of vocational expert testimony. [Doc. 9-1, pg. 21]. In this case, the ALJ utilized the VE to testify about the physical and mental demands of Plaintiff's past relevant

13

work. He identified each of Plaintiff's past relevant work and attributed a skill and exertional level to each. For her past job as a jailer, he found it to be skilled and required medium exertion. (Tr. 54). For automobile salesperson and finance manager, he found the positions to be skilled and light exertional. *Id.*

It is not improper for the ALJ to rely on the VE for assistance in completing the analysis at step four. The regulations contemplate the ALJ using the VE to assist in determining whether a claimant can do their past relevant work. Specifically, 20 C.F.R. § 404.1560(b)(2) provides that in making those determinations, "[w]e may use the services of vocational experts…." It was not improper for the ALJ to rely on the VE to assist in determining whether Plaintiff could return to her past relevant work. Given that the ALJ found Plaintiff was limited to light exertion and Plaintiff's prior relevant work did not exceed that exertional level based on the VE testimony, the ALJ's decision was supported by substantial evidence.

## IV. CONCLUSION

In the opinion of the Court, for the reasons stated herein, there was substantial evidence to support the ALJ's determination of the Plaintiff's RFC, and that he committed no reversible error in his evaluation of the evidence. Accordingly, Plaintiff's Motion for Judgment on the Pleadings [Doc. 9] is DENIED, and that Defendant Commissioner's Motion for Summary Judgment [Doc. 15] is GRANTED. This case is dismissed.

SO ORDERED:

s/Clifton L. Corker
United States Magistrate Judge